1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

WESTERN STATES PAVING CO., INC.,

9
             Plaintiff,

10
      v.

11
THE WASHINGTON STATE DEPARTMENT
OF TRANSPORTATION; DOUGLAS
12
MACDONALD, Secretary of the Washington
State Department of Transportation; the CITY
13
OF VANCOUVER, and CLARK COUNTY,

14
             Defendants,

15
    and

16
UNITED STATES OF AMERICA, UNITED
STATES DEPARTMENT OF
17
TRANSPORTATION, and FEDERAL
HIGHWAY ADMINISTRATION,
18

19
           Intervenor-Defendants.

Case No.  C00-5204 RBL

ORDER GRANTING PARTIAL
SUMMARY JUDGMENT

20
21
22
23
24
25
26
27

      This matter comes before the Court on Defendant Washington State Department of Transportation's ("WSDOT's") Motion for Summary Judgment - Damage Claims, Dkt. 170. Defendants Clark County and the City of Vancouver both responded to this motion and renewed their motions for summary judgment. Dkts. 175-1, 178. Plaintiff has responded to WSDOT's motion, Dkt. 176-1, and WSDOT has replied to that response, Dkt. 182. Also, Plaintiff has responded to the city and county renewed summary judgment motions. Dkt. 183-1. The Court, having considered the motions, supporting documents, and the record herein, will rule on the matters simultaneously.

28

**SUMMARY**

Plaintiff has challenged the constitutionality of the Transportation Equity Act for the 21st Century, Pub. L. 105-178, 112 Stat. 107, 23 U.S.C. § 101, *et seq.* (TEA-21), Washington State's set-aside program for disadvantaged businesses, and Clark County and the City of Vancouver's selection of contractors on three federally-funded highway projects.

Defendant WSDOT seeks summary judgment and the dismissal of Plaintiff's damage claims, and Clark County and the City of Vancouver have joined in this motion and renewed their previous motions for summary judgment on all claims.  For the reasons discussed below, this Court concludes that Plaintiff's 42 U.S.C. § 2000d claim for damages may proceed as against WSDOT, but determines that all other claims against all Defendants, for both damages and injunctive relief, will be dismissed.

**Disadvantaged Business Enterprise Certification**

Plaintiff challenges the legality of the certification and selection of sub-contractors on three federally-funded local highway projects.  The Court has previously described the federal and state laws and regulations governing the setting-aside of subcontracts for minority-owned, women-owned, and economically disadvantaged businesses, and the Court incorporates that discussion here.  *See* Dkt. 148 at 2-7; *Western States Paving Co., Inc., v. Washington State Department of Transportation, et al*, 407 F.3d 983, 995-1001 (9th Cir. 20005).

Washington has established its disadvantaged business enterprise ("DBE") program in order to comply with Federal regulations enacted pursuant to the Transportation Equity Act for the 21st Century, Pub. L. 105-178, 112 Stat. 107 ("TEA-21").  Dkt. 148 at 3-4.  TEA-21 requires that "not less than 10 percent" of highway funding "shall be expended with small business concerns owned and controlled by socially and economically disadvantaged individuals."  TEA-21, § 1101(b).  *See also* 49 C.F.R. § 26.67, app. E (listing ethnic groups that the regulations presume to be socially and economically disadvantaged).  TEA-21 implementing regulations also condition the receipt of federal highway funds on the states establishing a DBE program, administering it in good faith, and setting project DBE utilization goals similar to TEA-21's.  Dkt. 148 at 3-4.  To comply with these requirements, WSDOT encourages businesses to apply with the State's Office of Minority and Women's Business Enterprises ("OMWBE"), which certifies DBE-eligible businesses.  Dkt. 170 at 20-21; *Western States*, 407 F.3d at 1001-02.  WSDOT then sets project goals for each state and local highway project receiving federal highway funds.  *Western States*, 407 F.3d at 987.

1    Plaintiff is a Vancouver-based asphalt and paving contractor.  It regularly bids for work on public

2    contracts, including federally-assisted road construction projects.  Plaintiff did not qualify for DBE

3    certification because it was not a member of a group TEA-21 regulations presume socially and

4    economically disadvantaged and because it exceeded financial criteria that otherwise would qualify it for

5    DBE certification as an economically disadvantaged business.  Dkt. 170 at 20-21.

6    On three occasions between March 1999 and August 2000, Western States submitted the low bid for

7    asphalt and paving work on federally-assisted projects only to be rejected in favor of a higher bid submitted

8    by Vancouver Paving, a DBE-certified contractor owned by a Caucasian woman.  Dkt. 170 at 20.  For each

9    contract, WSDOT imposed a race- and gender-conscious contract goal on Clark County and the City of

10    Vancouver which specified that a fixed percentage of the total contract should be awarded to DBEs.  *See*

11    *Western States*, 407 F.3d at 1002; Dkt. 102 at 2; Dkt. 97 at 3, Dkt 178-2 at 11.

12    <u>**The Claim**</u>

13    Plaintiff filed this suit challenging the constitutionality of the requirement that contractors use race

14    and gender based criteria when awarding sub-contracts.  Plaintiff claims that such practices violate the due

15    process and equal protection clauses of the Fifth and Fourteenth Amendments to the United States

16    Constitution, as well as federal civil rights statutes.  42 U.S.C. §§ 1981, 1983, and 2000d.  Plaintiff seeks

17    monetary damages, attorney's fees, and costs, in addition to declaratory and injunctive relief.  Dkt. 31.  The

18    Court previously dismissed Plaintiff's state civil rights claim under Wash. Rev. Code § 49.60.  Dkt. 148.

19    The Court previously granted summary judgment in favor of Defendants on all claims, and Plaintiff

20    appealed to the United States Court of Appeals for the Ninth Circuit.  While the Ninth Circuit held that

21    TEA-21, its implementing regulations, and Washington's Disadvantaged Business Enterprises (DBE)

22    programs were facially constitutional, the Court found Washington's DBE program to violate the equal

23    protection clause as-applied, and remanded the case to this Court to consider Plaintiff's 42 U.S.C. §§ 1981,

24    1983, and 2000d claims in the first instance.  *See Western States,* 407 F.3d at 983.

25    On remand, this Court entered partial summary judgment on the issue of liability in favor of plaintiff

26    against WSDOT, the City of Vancouver, and Clark County, the federal Defendants having been previously

27    dismissed.  Dkt. 164.  That order was not in response to any motion of the parties and the Court issued it

28    specifically to carry out the mandate of the Ninth Circuit.  That order establishes liability only to the extent

of the Ninth Circuit mandate, that is, Washington's DBE program, as-applied, was not sufficiently narrowly

1   tailored to further Congress' compelling remedial interest behind TEA-21. *See Western States*, 407 F.3d at

2   1003. Plaintiff's claims for damages remain and this Court shall, per the mandate of the Ninth Circuit,

3   resolve them in the first instance. *See id*. at 1003.

4                           **Summary Judgment Standard**

5           Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and

6   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

7   fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (1987). The

8   moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

9   showing on an essential element of a claim in the case on which the nonmoving party has the burden of

10  proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where

11  the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.

12  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

13  present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R.

14  Civ. P. 56(e) (1987). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

15  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the

16  truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Elec.*

17  *Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987).

18          The determination of the existence of a material fact is often a close question. The court must

19  consider the substantive evidentiary burden that the nonmoving party must meet at trial - e.g., a

20  preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*, 809

21  F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only

22  when the facts specifically attested by that party contradict facts specifically attested by the moving party.

23  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the

24  hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Service Inc.*, 809 F.2d at 630

25  (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and

26  "missing facts" will not be "presumed." *Lujan v. Natl. Widlife Fedn.*, 497 U.S. 871, 888-89 (1990).

27

28                           **ANALYSIS**

        Plaintiff's 42 U.S.C. § 2000d claim may proceed as against WSDOT and Secretary MacDonald,

because Washington's DBE program is subject to strict scrutiny and the Ninth Circuit has determined that the WSDOT DBE program was not sufficiently narrowly tailored to withstand such scrutiny.  All claims for injunctive relief are moot and should be dismissed, and all of Plaintiff's other claims against all Defendants should be dismissed on various grounds described below.

**1.  Injunctive relief is not warranted for any of Plaintiff's claims.**

Injunctive relief for all of Plaintiff's claims is moot due to WSDOT's voluntary cessation of its DBE program.  "Article III of the United States Constitution requires the existence of a live case or controversy throughout all stages of federal judicial proceedings."  *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1153 (9th Cir. 2006).  While there are several exceptions that permit the Court to adjudicate an otherwise moot claim due to the ongoing existence of a sufficient case or controversy, Plaintiff has not presented sufficient evidence warranting such an exception.  The Court therefore should dismiss all of Plaintiff's claims for injunctive relief.

While WSDOT's termination of the unlawful program is sufficient to render injunctive relief moot, Plaintiff correctly points out that the Court could still order such relief if warranted.  A defendant's voluntary termination of an allegedly wrongful activity does not moot a case where the activity is "capable of repetition, yet evading review."  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167, 190 (2000).  Nevertheless, the Court still must find an "allegation of present or threatened injury upon which initial standing must be based," that is, an allegation sufficient to support the existence of an actual case or controversy under Article III.  *Friends of the Earth, Inc.*, 528 U.S. at 191.  *See also Adarand Contractors v. Slater*, 28 U.S. 216, 222 (2000) ("Voluntary cessation of challenged conduct moots a case, however, only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.") (internal quotations and citations omitted).  Plaintiff has attempted to show that such an exception should apply in this case.

The record shows that WSDOT has voluntarily terminated its DBE program and that enjoining the previous program is in fact moot.  WSDOT states that "[i]mmediately following the [Ninth Circuit *Western States*] decision, WSDOT voluntarily discontinued the use of DBE subcontractor goals in its highway construction contracts."  Dkt. 170 at 3.  *See also* Dkt. 171 at 2, 4, 5 (WSDOT affirming its suspension of the DBE program in letters to local governments and DBE-eligible contractors).  In response, Plaintiff notes the following excerpt from a letter from WSDOT's Office of Equal Opportunity as evidence that

1  WSDOT is not or will not be complying with the *Western States* decision:

2      "We need to acknowledge the existence of race and gender discrimination as well as the

3      persistent lingering effects of that discrimination.  And we need to fashion programs that

4      address the effects of that discrimination while not unduly burdening others.  It can be a

5      delicate balance."

6  Dkt. 176-2 at 1.  This out-of-context statement is not sufficient to deny summary judgment, even in the

7  light most favorable to Plaintiff.  As WSDOT argues, the Ninth Circuit did not bar any and all future DBE

8  programs.  Dkt. 182 at 8.  The decision permits WSDOT to reinstate a DBE program that relies on

9  sufficient statistical and anecdotal evidence of past discrimination.  *Id.*  The Court finds that Ms. Nnambi's

10  statement, especially in the context of the entire letter (e.g. "[w]e intend to continue administering a DBE

11  program that complies with state and federal law, including the recent Western States Paving decision."),

12  does not provide evidence that WSDOT is disregarding the Ninth Circuit's order and continuing to

13  administer its previous, deficient DBE program.  This is a nonspecific statement and the Court will not

14  presume "missing facts" for the nonmoving party.  *Lujan*, 497 U.S. at 888.  The record sufficiently

15  indicates that WSDOT has in fact terminated the offending program and is in full compliance with the

16  Ninth Circuit's mandate.

17      Western States cites to *LGS Architects* as controlling authority supporting its argument that

18  injunctive relief is not moot, but *LGS Architects* is distinguishable on the facts.  Plaintiff LGS Architects

19  sought to enjoin the defendant developer Concordia's use of LGS's copyrighted building plans, but the

20  developer had completed the project at issue before the Ninth Circuit heard the case.  *LGS Architects*, 434

21  F.3d at 1152.  The project's completion clearly rendered an injunction against *that* project moot, but even

22  Concordia's representation that it would never again use the plans did not moot an injunction ordering the

23  return of the disputed plans.  *LGS Architects*, 434 F.3d at 1154.  Unlike *LGS Architects*, it is absolutely

24  clear in this case that WSDOT will not resume or continue the activities the Ninth Circuit found unlawful

25  in *Western States*.  WSDOT has exceeded Concordia's mere representation to LGS by issuing guidance to

26  local governments, sending informational letters such as Ms. Nnambi's to DBE-eligible contractors, and

27  acting in accordance with USDOT instructions following the *Western States* decision.  *See* Dkt. 171 at 2,

28  4, 5, 8.  These concrete actions all affirm its representation to the Court that it has terminated the unlawful

activities and is adhering to the Ninth Circuit decision.  Indeed, WSDOT will face increased scrutiny

following the Ninth Circuit decision, and it is highly unlikely that WSDOT will omit a careful review of future DBE certifications and project utilization goals for compliance with *Western States*. *See* Dkt. 171 at 10-12. Also, while the *Western States* decision is not an injunction, Plaintiff (and all contractors in Washington) will have a clear legal basis to seek timely and appropriate relief from any future unlawful DBE program. For these reasons, *LGS Architects* does not require the Court to adjudicate the moot injunctive relief claims.

Western States' argument that the Court should adjudicate the merits of its claims for injunctive relief also fails because a prospective injunction is not yet ripe. "[F]ederal courts established pursuant to Article III of the Constitution do not render advisory opinions." *United Public Workers (C.I.O.) v. Mitchell*, 330 U.S. 75 (1947). As noted, WSDOT has sufficiently shown that it has terminated the unlawful DBE program. In absence of any evidence of how WSDOT intends to reinstate its DBE program (if it does at all), for this Court to enjoin *any* future, undeveloped WSDOT DBE program would not only exceed the Ninth Circuit's mandate to comply with federal regulations, but would adjudicate a dispute for which there is not a fully developed set of facts before the Court. The termination of the program renders Western States' claims moot, and a renewed claim for injunctive relief is not ripe at this time.

Accordingly, Western States' claims for injunctive relief will be dismissed against all Defendants.

**2. The City and County did not act with discriminatory intent and all claims against them should be dismissed.**

The record sufficiently shows that the City of Vancouver and Clark County are not parties to the unlawful discriminatory actions the Ninth Circuit identified. Each of Plaintiff's claims against the city and county require discriminatory intent to establish liability for damages. Since any action on their part in the implementation of WSDOT's unlawful DBE program was involuntary and required no independent activity, they cannot have intentionally discriminated against Plaintiff. Since the Court has already determined that injunctive relief is moot, all claims against the City of Vancouver and Clark County will be dismissed.

**A. The City and County cannot be liable for damages under 42 U.S.C. §§ 1981, 1983, and 2000d unless they acted with discriminatory intent.**

Each of the statutes Plaintiff invokes to hold the city and county liable require proof of discriminatory intent to obtain compensatory damages. In order to establish discriminatory intent, Plaintiff

1  must show that "it has been intentionally treated differently from others similarly situated and that there is

2  no rational basis for the difference in treatment." *SeaRiver Maritime Financial Holdings, Inc. v. Mineta*,

3  309 F.3d 662, 679 (9th Cir.2002).  *See also Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996)

4  ("Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.

5  It implies that a decisionmaker singled out a particular group for disparate treatment and selected his

6  course of action at least in part for the purpose of causing its adverse effects on the identifiable group.")

7  (internal quotations and citations omitted).   Consequently, if the city and county can establish that no

8  genuine issue of material fact remains regarding whether or not they acted with discriminatory intent, the

9  damage claims against them must be dismissed.

10         Plaintiff claims that the city and county violated 42 U.S.C. § 1981, but § 1981 extends only to

11  actions having a discriminatory motive or purpose.  Specifically, liability under § 1981 does not extend to

12  actions having only a discriminatory impact.  *See General Building Contractors v. Pennsylvania*, 458 U.S.

13  375 (1982).

14         Plaintiff also claims that the city and county violated 42 U.S.C. § 1983, but that statute also

15  requires proof of discriminatory intent in order for the plaintiff to recover.  Plaintiff must establish "not

16  only . . . discriminatory impact, but also discriminatory intent . . . ."  *Chavez v. Temple Union High School

17  Dist.*, 565 F.2d 1087, 1095 (9th Cir. 1977).

18         Plaintiff's Title VI claims under 42 U.S.C. § 2000d also require discriminatory intent in order to

19  receive compensatory relief.  While "private individuals may sue to enforce § 601 of Title VI [42 U.S.C. §

20  2000d] and obtain both injunctive relief and damages," § 2000d "prohibits only intentional discrimination."

21  *Alexander v. Sandoval*, 532 U.S. 275, 279-280 (2001).  *See also Guardians Assn. v. Civil Service

22  Comm'n of New York*, 463 U.S. 582, 584 (1983) ("in the absence of proof of discriminatory animus,

23  compensatory relief should not be awarded to private Title VI plaintiffs; unless discriminatory intent is

24  shown, declaratory and limited injunctive relief should be the only available private remedies for Title VI

25  violations").  Since the Court has found injunctive relief to be moot in this case, Plaintiff must establish

26  proof of discriminatory intent in order to recover on this claim.

27         In conclusion, the statutes upon which Plaintiff relies require proof of discriminatory intent since

28  the Court has determined injunctive relief to be moot.  To obtain summary judgment on these claims, the

city and county need only show that they did not intentionally discriminate against Plaintiff.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT
Page - 8

**B. The City and County are not parties to the precise discriminatory actions.**

The City of Vancouver and Clark County are not parties to the precise discriminatory actions at issue in this case.  First, the city and county did not set the DBE utilization requirements for their projects.  Second, the city and county were not party to the certification of a contractor as a DBE-eligible business.  Finally, the prime contractors independently selected subcontractors to meet the utilization goal.

While WSDOT's DBE program complied with federal regulations, the Ninth Circuit concluded that the methods through which it implemented that program lacked sufficient justification.  The State, or, more precisely, WSDOT, acted unlawfully in two ways.  First, WSDOT developed DBE utilization goals without sufficient anecdotal or statistical evidence of past discrimination to support the use of race-conscious remedial measures.  *Western States*, 407 F.3d at 1000-02.  Second, WSDOT improperly relied on the affidavits of prospective contractors seeking DBE status who averred that they had been subject to "general societal discrimination."  *Western States*, 407 F.3d at 1002.

The discriminatory actions at issue all occurred due to conduct of the State Defendants, not the city and county.  Western States's injury lies in being denied an equal opportunity to compete with other contractors, including Vancouver Paving, for all federally-assisted highway projects.  *See Northeast Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida, et al.*, 508 U.S. 656, 666 (1993) ("And in the context of a challenge to a set-aside program, the "injury in fact" is the inability to compete on an equal footing in the bidding process, not the loss of the contract.") (internal citations omitted).  Consequently, any intentional discrimination occurred at the time the *State* established its DBE criteria and when the *State* denied Western States's DBE certification on the basis of its shareholder's race, gender, and/or net worth.

The specification of Western States's actual injury and an analysis of the facts in the record establishes that the City of Vancouver and Clark County did not intentionally participate in either of these actions beyond passing requirements on to prime contractors.  First, considerable evidence in the record shows that Clark County and the City of Vancouver did not have any role in setting the DBE utilization requirement for their projects; instead, WSDOT determined and imposed this figure upon the county and city.  The Ninth Circuit found that "[i]n order to comply with TEA-21's minority utilization requirements, the State mandated that the city obtain 14% minority participation on the project . . . [i]n distributing these funds to Clark County, the WSDOT imposed a 14% minority utilization requirement."  *Western States*,

407 F.3d at 987.  The City of Vancouver's Procurement and Contracts manager stated in her affidavit that "[i]n connection with the Mill Plain Project, WSDOT issued a letter to the City imposing a 16% DBE goal . . . ."  Dkt. 102 at 2.  Clark County, in its original Motion for Summary Judgment, stated that "[t]he DBE requirement for the Padden Parkway (East Leg) Project was a fourteen percent DBE goal imposed by WSDOT . . . ."  Dkt. 97 at 3.  Finally, a WSDOT letter to the county's public work director stated, "[t]his office and the Regional Local Programs Engineer have applied the [DBE program] criteria and mutually established a 14% mandatory DBE goal for this project."  Dkt. 178-2 at 11.  Plaintiff's evidence does not contradict these statements and findings.

Second, the city and county did not take part in any way in the certification of a contractor as a business eligible for DBE status.  In contrast, the State's OMWBE considered businesses' applications and determined whether they met the criteria for DBE certification.  *See Western States*, 407 F.3d at 1001-02.  The State maintained the list of DBE-eligible businesses and required local governments and prime contractors to ensure that "award contractors are federally certified as a disadvantaged business enterprise . . . [a] firm's certification can be verified via the Internet in the WSDOT home page or by contacting OMWBE . . . ."  Dkt. 178-2 at 11.  There are no contradictory facts in the record, and Plaintiff has not provided factual evidence to contradict these statements and findings.

Finally, the city and county selected the prime contractors but did not determine who would receive the subcontracts.  Instead, the city and county passed on WSDOT's DBE utilization goal for the particular project to the prime contractor as a condition in its contract.  The City of Vancouver clearly stated the process:

"The City was required to include these DBE requirements in its contracts as a condition of receiving the federal funding through WSDOT . . . The City played no part in determining who would get the subcontract on the projects.  Western States did not submit bids directly to the City; rather, it provided bids to prospective prime contractors . . . The prime contractors, independent of the City, controlled which company received the subcontract."

Dkt. 175-1 at 12.  The Ninth Circuit's decision supports this statement:

"The [Burton Road Project] prime contractor was bound by [the DBE utilization goal] requirement and rejected Western States' bid in favor of a higher bid from a minority-owned firm . . . the [Padden Parkway Project] prime contractor explicitly identified the

contract's minority utilization requirement as the reason it rejected Western States' bid."
*Western States*, 407 F.3d at 987.  There is no evidence in the record of intentional discrimination on the part of the city and county in the selection of Vancouver Paving's bid over Plaintiff's bid.  Again, Plaintiff's evidence does not contradict these statements and findings.

Plaintiff's response to the city and county summary judgment motions introduces no new factual evidence and its legal arguments do not apply to the facts of this case.  First, Plaintiff cites several cases to show that "the requirements contained in [the city and county contract bid proposals] provide direct evidence of a discriminatory intent."  Dkt. 183-1 at 3.  Not only is this a conclusory statement insufficient to withstand summary judgment, each of Plaintiff's cited cases supporting this proposition involved a defendant who personally directed a discriminatory action.  In contrast, the city and county passed on state contracting requirements without participating in the process of DBE certification or project utilization goal setting.  Second, Plaintiff claims that the classifications at issue "by themselves demonstrate intentional discrimination," Dkt. 183-1 at 3, but this conclusory proposition again fails to account for the precise actors involved in the allegedly unlawful classifications at issue.  Finally, Plaintiff argues that a desire to obtain the funds does not provide an excuse for intentional discrimination.  Dkt. 183-1 at 3.  That may be true, but this argument still introduces no factual evidence to contradict the record's lack of intentional discrimination by the city and county.  Also, each of the cases Plaintiff cites in support of this final argument involves a private business defendant who claimed profit maximization as a justification for the business' own intentional discrimination.  In contrast, the city and county met state funding conditions in order to obtain federal highway funds, but they were not an active participant in the alleged intentional discrimination at issue.  None of these arguments raise issues of material fact sufficient to withstand summary judgment.

The record thus shows that there are no genuine issues of material fact regarding the roles of the City of Vancouver and Clark County in the unlawful actions the Ninth Circuit identified.  In fact, the record sufficiently shows for the purposes of summary judgment that the city and county were not party in any way to those actions, and that they may not even have had any knowledge whatsoever of the procedures the Ninth Circuit found unlawful in *Western States*.  Contrary to Western States's allegations, the city and county had no DBE programs of their own, nor did they intend to discriminate beyond acting as a pass-through for the DBE-conditioned federal funds.  Such participation is no more than "intent as

1    volition or intent as awareness of consequences." *Nabozny*, 92 F.3d at 454. Accordingly, given the lack of

2    discriminatory intent on the part of the city and county, the Court should dismiss all claims against them.

3    **3.  The Eleventh Amendment bars Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims against WSDOT**

4    **and WSDOT Secretary MacDonald.**

5           The State Defendants argue that Eleventh Amendment sovereign immunity shields them from

6    damage liability for all claims. The Court does not find that the Eleventh Amendment bars Plaintiff's §

7    2000d claim, but agrees with Defendants that sovereign immunity bars damage relief for Plaintiff's §§ 1981

8    and 1983 claims.

9           It is important to note at the outset that the Court considers Plaintiff to have sued Secretary

10   MacDonald in his official capacity, and the Court will treat the suit against Secretary MacDonald as a suit

11   against the State. "Personal capacity suits seek to impose personal liability upon a government official for

12   actions he takes under color of state law . . . [an official capacity suit] is *not* a suit against the official

13   personally, for the real party in interest is the [agency]." *Kentucky v. Graham*, 473 U.S. 159, 165-66

14   (1985) (internal citations omitted, emphasis in original). Although Plaintiff appears in its recent pleadings

15   to argue that it has named Secretary MacDonald in his personal capacity, the record shows that Plaintiff

16   has named him in his official capacity only. First, Plaintiff originally sued Secretary MacDonald's

17   predecessor, Sid Morrison, "in his official capacity." Dkt. 31. Second, after Mr. Morrison retired, the

18   parties stipulated to substitute Mr. MacDonald in his official capacity as a defendant. Dkt. 82 ("Mr.

19   Douglas MacDonald has replaced Mr. Sid Morrison as the Secretary of the Washington State Department

20   of Transportation. Mr. Morrison was named as defendant in his official capacity only. Pursuant to Fed. R.

21   Civ. P. 25(d)(1), Mr. MacDonald in his official capacity should be substituted as a defendant in this case.").

22   Third, Plaintiff introduces no facts showing personal participation on the part of Secretary MacDonald, and

23   instead cites various caselaw without any application to the facts of this case. *See* Dkt. 176-1 at 7-8. The

24   pleadings and affidavits do not support a personal capacity suit, and an attempt to amend the complaint at

25   this stage would be untimely.

26          Plaintiffs' claims against WSDOT and Secretary MacDonald under §§ 1981 and 1983 must be

27   dismissed as they are barred by the Eleventh Amendment. First, the Ninth Circuit has held that "[t]here is

28   no doubt that suit under either §§ 1981 or 1983 against [a state agency] is a suit against the state *qua* state

     and is, therefore, barred by the Eleventh Amendment." *Peters v. Lieuallen*, 693 F.2d 966, 970 (9th Cir.

1982); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-103 (1984) (Eleventh Amendment sovereign immunity extends to state agencies and to damage claims against state officials acting in their official capacity).  The Supreme Court has held that Congress did not abrogate the states' Eleventh Amendment sovereign immunity by enacting § 1983, *see Quern v. Jordan*, 440 U.S. 332, 339-40 (1979), and that a state, state agencies, or state officials acting in their official capacities are not "persons" within the statutory language of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989).  Since the law clearly prohibits damage relief against WSDOT and Secretary MacDonald under §§ 1981 and 1983, it is only necessary to consider their liability under § 2000d.  The Court therefore should dismiss the §§1981 and 1983 claims.

**4.  WSDOT's DBE Program was not Sufficiently Narrowly Tailored, and the State Defendants are Not Entitled to Judgment as a Matter of Law on Plaintiff's Title VI claim against them.**

42 U.S.C. § 2000d prohibits racial discrimination in programs receiving Federal financial assistance, such as the highway construction projects at issue in this case:

> "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

Since Plaintiff's claims for injunctive relief are moot, it is only necessary to consider the damage liability of WSDOT and Secretary MacDonald under this statute.  The Court concludes that the Eleventh Amendment does not provide the State Defendants immunity from suit under Title VI.  However, because the DBE program is not facially neutral and because the Ninth Circuit has already held that the program was not narrowly tailored, the State Defendants' Motion for Summary Judgment on the Plaintiff's Title VI claim should be denied.

**A.  The Eleventh Amendment does not bar Plaintiff's 42 U.S.C. § 2000d claim.**

Congress has clearly conditioned the receipt of federal highway funds on compliance with Title VI and the waiver of sovereign immunity from claims arising under Title VI.  It is important to note at the outset that Title VI is Spending Clause legislation.  *Guardians Assn., etc., et al. v. Civil Service Commission of New York*, 436 U.S. 582, 598-99 (1983).  In order to validly condition the receipt of federal funds under Spending Clause legislation on a state's consent to waive its sovereign immunity, the legislation must "manifest[] a clear intent to condition participation in the programs funded under the Act

on a State's consent to waive its constitutional immunity." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985). *See also Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981) ("if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously"). Congress has sufficiently indicated its intent to condition the funding, and the language of both Title VI and the implementing federal funding regulations sufficiently indicate this intent to render acceptance of the funds a waiver of sovereign immunity.

Title VI provides the statutory framework through which a Federal department or agency may condition the receipt of funding.  Title VI states, "[n]o person in the United States shall on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d. Section 2000d-1 grants federal departments "empowered to extend Federal financial assistance to any program or activity" the authority to "effectuate the provisions of section 2000d . . . by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance . . . ."  Additionally, § 2000d-7 states, "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . Title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] . . . ."  As a result, it is necessary to consider the implementing legislation and regulations upon which Washington's highway funding depended in order to determine whether the condition validly waived Defendants' immunity.

The applicable highway funding regulations gave WSDOT ample notice that Title VI, including § 2000d and § 2000d-7, would apply.  For funding conditions based on Title VI to be valid, "[i]n cases where intentional discrimination has been shown . . . there can be no question as to what the recipient's obligation under the program was and no question that the recipient was aware of that obligation." *Guardians Assn.*, 436 U.S. at 597.  26 C.F.R. § 26.1, entitled "Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs," was enacted under authority of § 2000d, et seq.  Also, 23 C.F.R. § 200.1, itself enacted under authority of "42 U.S.C. 2000d to 2000d-4," states that its purpose is to "implement[] the Federal Highway Administration (FHWA) Title VI compliance program under Title VI of the Civil Rights Act of 1964."  Part 200 requires States to make assurances to the United States Department of Transportation that they are in compliance with Title VI.

Despite WSDOT's argument that Title VI should not be found to be adequate notice to constitute a valid waiver of sovereign immunity, the Court finds clear language in these regulations putting the state on notice - as a recipient of federal funds - that it faced private causes of action in the event of noncompliance. Accordingly, to the extent the State argues that the regulations give inadequate notice, sovereign immunity does not bar Plaintiff's § 2000d claim against WSDOT and Secretary MacDonald.

Defendants argue that the subsequent *Seminole Tribe* case overrules prior precedent holding that Spending Clause legislation can validly condition state sovereign immunity, Dkt. 170 at 11-12, but this argument incorrectly applies *Seminole Tribe*'s holding.  In *Seminole Tribe*, the Supreme Court ruled that the Indian Commerce Clause, U.S. Const. Art. 1, § 8, cl. 3, does not grant Congress the power to *unilaterally abrogate* state sovereign immunity.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 47 (1996).  This holding does not upset precedents such as *Guardians* that have held Spending Clause legislation to grant Congress the power to *condition* the receipt of funding on the State's waiver of its sovereign immunity.  While "the Fourteenth Amendment is now the only recognized constitutional source of congressional abrogation authority," Congress retains the ability to validly condition the receipt of federal funds on a State's waiver of its sovereign immunity.  *See Pace v. Bogalusa City School Board*, 403 F.3d 272, 276 (5th Cir. 2005).

**B.  The WSDOT DBE Program was not narrowly tailored to serve a compelling governmental interest.**

Discriminatory intent is an essential element of a plaintiff's claim under Title VI of the Civil Rights Act of 1964.  *Guardians Ass'n v. Civil Service Com'n of the City of New York,* 463 U.S. 582, 610, 103 S. Ct. 3221 (1983).  In *Guardians* the Court made clear that under *Bakke* only intentional discrimination was prohibited under Title VI.  *Alexander v. Sandoval*, 532 U.S. 275, 281, 121 S. Ct. 1511 (2001).  "To prove intentional discrimination by a facially neutral policy, a plaintiff must show that the relevant decision maker (e.g. state legislature) adopted the policy at issue ''because of' not merely 'in spite of,' its adverse effects upon an identifiable group.'"  *Pryor v. National Collegiate Athletic*, 288 F.3d 548 (3rd Cir. 2002), *quoting Personnel Admistrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).  Determining whether or not invidious discrimination was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence as may be available.  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 229, 242 (1977). The court may also examine as

1    evidence of intentional discrimination the historical background of the decision, the specific sequence of

2    events leading up to the challenged decision, legislative or administrative history of the decision making

3    body, and any other evidence relevant to a showing of discriminatory purpose. *Id.* at 266-268.

4          The State Defendants argue that, even if the Eleventh Amendment does not bar the Plaintiff's 42

5    U.S.C. § 2000d claim, WSDOT cannot be held liable for damages on the facts of this case. They

6    specifically argue that "there is no evidence that the WSDOT staff knew of or consciously considered

7    Western State's race or that of its shareholders when calculating the annual utilization goal." *See* Dkt. 170

8    at 17-18.

9          While this may be true, the WSDOT's DBE program was not a "facially neutral" policy.  Instead, it

10   was specifically race conscious.  Any resulting discrimination was therefore intentional, whether the reason

11   for the classification was benign or its purpose remedial.  *See Shaw v. Hunt*, 517 U.S. 899, 904 (1996).

12         In *City of Richmond v. J.A. Croson Co.*, 488 U.S 469 (1989), the Supreme Court explained that

13   racial classifications are subject to strict scrutiny:

14         Absent searching judicial inquiry into the justification for such race-based measures, there is
15         simply no way of determining what classifications are "benign" or "remedial" and what
           classifications are in fact motivated by illegitimate notions of racial inferiority or simple
16         racial politics. Indeed, the purpose of strict scrutiny is to "smoke out" illegitimate uses of
           race by assuring that the legislative body is pursuing a goal important enough to warrant use
17         of a highly suspect tool. The test also ensures that the means chosen "fit" this compelling
           goal so closely that there is little or no possibility that the motive for the classification was
18         illegitimate racial prejudice or stereotype.

19   *Id.* at 721.  At least one commentator has opined that, "it is even doubtful whether the Court's majority

20   now differentiates between 'invidious' and 'benign' racial discrimination at all." *See* Pillai, J., *Shrinking*

21   *Domain of Invidious Intent*, 9 Wm & Mary Bill Rts. J. 525 at 557 (2001) (*citing Croson, supra; and*

22   *Adarand Constructors v. Pena*, 515 U.S. 200 (1995)).  The Supreme Court has recognized that "good

23   intentions" alone are not enough to sustain a supposedly "benign" racial classification. *Adarand*, 515 U.S.

24   at 228-229 (quoting Justice Stevens's dissent in *Fullilove v. Klutznick,* 448 U.S. 448, 545 (1980)).

25         In any event, the WSDOT DBE program is subject to strict scrutiny, i.e., in order for this Court to

26   uphold the DBE program as constitutional, the State Defendants must show that the program served a

27   compelling governmental interest and was narrowly tailored to achieve that goal.

28         In remanding this case, the Ninth Circuit has already concluded that the WSDOT DBE program

     was not sufficiently narrowly tailored due to the lack of evidence of past discrimination. *See Western*

*States*, 407 F.3d at 1002:

> The record is therefore devoid of any evidence suggesting that minorities currently suffer-or have ever suffered-discrimination in the Washington transportation contracting industry. We must therefore conclude that Washington's application of TEA-21 conflicts with the guarantees of equal protection because the State's DBE program is not narrowly tailored to further Congress's remedial objective. The "exact connection" between means and ends that is a prerequisite to the use of racial classifications is demonstrably absent from Washington's DBE program.

In light of this ruling, and the Court's conclusion that the lack of intentional discrimination is not a defense in this case, the State Defendant's Motion for Summary Judgment should be DENIED.

Remaining for further adjudication is the remedy available to the Plaintiffs on their Title VI claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions for summary judgment in part and denies them in part. Therefore it is hereby ORDERED that the City of Vancouver's Renewed Motion for Summary Judgment, Dkt. 175-1, is GRANTED and all claims against the City of Vancouver are DISMISSED. Clark County's Renewed Motion for Summary Judgment, Dkt. 178, is GRANTED and all claims against Clark County are DISMISSED. WSDOT's Motion for Summary Judgment, Dkt. 170, is GRANTED in part and DENIED in part, as follows: Plaintiff's §§ 1981 and 1983 claims against WSDOT and Secretary MacDonald are DISMISSED, and Plaintiff's § 2000d claim against WSDOT and Secretary MacDonald may proceed. Finally, all of Plaintiff's claims for injunctive relief are DISMISSED.

DATED this 23rd day of June, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE